# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **ROBERT EUGENE HERNANDEZ,** | § | |
| **#56069-179,** | § | |
| | § | |
| **Movant,** | § | |
| | § | **SA-23-CV-00861-XR** |
| **v.** | § | **SA-17-CR-391-XR-28** |
| | § | |
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| **Respondent.** | § | |

## MEMORANDUM OPINION AND ORDER

The Court has considered Movant Robert Eugene Hernandez's ("Movant") Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255 ("Motion") (ECF No. 2550)[1] and Memorandum in Support (ECF No. 2551). It has also considered Respondent United States of America's ("the Government") Response (ECF No. 2564) and Movant's Reply (ECF No. 2638). After consideration, the Court denies Movant's motion.

## BACKGROUND AND PROCEDURAL HISTORY

Movant is a 55-year-old inmate at the United States Penitentiary McCreary in Pine Knot, Kentucky. *See* Bureau of Prisons, Find an Inmate, https://www.bop.gov/inmateloc/ (search for Reg. No. 56069-179, last visited Aug. 9, 2024). His projected release date is August 21, 2050. *Id*.

Movant belonged to the Texas Mexican Mafia ("TMM"), a prison and street gang established in the Texas prison system in 1984. *United States v. Hernandez*, No. 19-51135, 2022 WL 3031301, at *1 (5th Cir. Aug. 1, 2022). He assisted with the TMM's drug distribution and racketeering activities in the San Antonio area. *Id*. He collected a ten percent tax, known as "the

---

[1] "ECF No." refers to the Electronic Case Filing number for documents docketed in SA-17-CR-391-XR-28. Where a discrepancy exists between page numbers on filed documents and page numbers assigned by the ECF system, the Court will use the latter page numbers.

dime," on narcotics sales by nonmembers who distributed in the gang's territory. He participated in home invasions designed to elicit compliance with the TMM tax. *Id.*

Movant was convicted of (1) conspiracy to interfere with commerce by threats or violence (Count One); (2) conspiracy to possess with intent to distribute 500 grams or more of methamphetamine, cocaine, and heroin; (3) possession of a firearm in furtherance of drug trafficking (Count Eighteen); (4) possession with intent to distribute methamphetamine (Count Nineteen); (5) felon in possession of a firearm (Count Twenty); and (5) conspiracy to possess firearms in furtherance of drug trafficking (Count Twenty-One). (ECF No. 1826 at 1). Before his sentencing, his counsel claimed Movant (1) was diagnosed with post-traumatic stress disorder after his service with the Army during the Gulf War; (2) suffered from numerous ailments as the result of a motorcycle accident in 2002; (3) did not participate in robbing or intimidating drug dealers; and (4) hoarded drugs to alleviate his pain. (ECF No. 1815 at 1–2). With a total offense level of 43 and a criminal history category of IV, Movant's guideline sentencing range was 240 months on Count One, life on Count Two, 60 months on Count Eighteen, 240 months on Count Nineteen, 120 months on Count Twenty, and 240 months on Count Twenty-One. (ECF No. 1827 at 1). Movant was sentenced below the guidelines range to a total term of 420 months' imprisonment. (ECF No. 1826 at 2).

On appeal, Movant argued his sentence was "substantively unreasonable because it [was] greater than necessary to achieve the sentencing goals of 18 U.S.C. § 3553(a)." *Hernandez*, 2022 WL 3031301 at \*1. He maintained the "district court should have given more consideration to his mitigating factors, including his advanced age and rehabilitative needs as a combat veteran." *Id.* But he failed "to rebut the presumption of reasonableness attached to his sentence by showing that

the district court failed to consider a pertinent factor or erred in balancing the sentencing factors." *Id*. Accordingly, his convictions and sentences were affirmed. *Id*. at *3.

Movant now claims his counsel provided constitutionally ineffective assistance during his trial when he (1) failed to object when Movant appeared in shackles for his jury selection; (2) requested payment despite his appointment as his counsel under the Criminal Justice Act; and (3) did not object to the trial court's instruction given in response to the jury's note. (ECF No. 2550 at 4). He contends his counsel provided ineffective assistance at his sentencing by failing to develop and present mitigating evidence *Id*. at 5. He asserts his appellate counsel provided ineffective assistance when he failed to challenge (1) Movant's appearance in shackles during jury selection; and (2) the trial court's instruction given in response to the jury's note. *Id*. at 6. He argues his custody of a firearm was protected by the Second Amendment and suggests his conviction for felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (Count Twenty) was accordingly void. *Id.* at 8 (citing *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022)). He asks the Court to vacate his convictions and sentences—and to dismiss Count Twenty. *Id.* at 12.

The Government answers Movant cannot show that his trial or appellate counsel were ineffective—or that his convictions and sentences were unconstitutional. (ECF No. 2564 at 18). It also asserts that "nothing in *Bruen* appears to call into question the constitutionality of § 922(g)(1)." *Id*. at 2.

Movant replies the Government's response is insufficient to warrant a judgment in its favor. (ECF No. 2638 at 1). He adds his claim that his custody of a firearm is protected by the

Second Amendment "is cognizable and potentially meritorious." *Id*. at 3. He also asserts that he is entitled to an evidentiary hearing. *Id.* at 4.

## STANDARD OF REVIEW

Section 2255 "'provides the primary means of collateral attack on a federal sentence.'" *Pack v. Yusuff*, 218 F.3d 448, 451 (5th Cir. 2000) (quoting *Cox v. Warden*, 911 F.2d 1111, 1113 (5th Cir. 1990)). But "it does not encompass all claimed errors in conviction and sentencing." *United States v. Addonizio*, 442 U.S. 178, 185 (1979). It is not a "substitute for direct appeals." *United States v. Willis*, 273 F.3d 592, 596 (5th Cir. 2001); *see also United States v. Frady*, 456 U.S. 152, 167 (1982) (imposing a "cause and actual prejudice" standard on motions for collateral relief when no objection was made on direct appeal). And it identifies only four grounds on which a prisoner may obtain relief: (1) the "sentence was imposed in violation of the Constitution or laws of the United States, (2) the sentencing court was without jurisdiction to impose the sentence, (3) the sentence was in excess of the maximum authorized by law, or (4) the sentence is otherwise subject to collateral attack." *United States v. Seyfert*, 67 F.3d 544, 546 (5th Cir. 1995) (citations omitted). Consequently, § 2255 does not permit relief on a claim of error that is neither constitutional nor jurisdictional unless the error constitutes "a fundamental defect which inherently results in a complete miscarriage of justice." *Hill v. United States*, 368 U.S. 424, 428 (1962). It also requires the prisoner to bear the burden of establishing a claim of error by a preponderance of the evidence. *Wright v. United States*, 624 F.2d 557, 558 (5th Cir. 1980) (citing *United States v. Kastenbaum*, 613 F.2d 86, 89 (5th Cir. 1980)). It permits a court to "vacate and set the judgment aside" if a prisoner's claims are meritorious and to "discharge the prisoner or resentence him or grant [him] a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b).

But it also allows a court to dismiss the motion "[i]f it plainly appears from the motion ... and the record of prior proceedings that the moving party is not entitled to relief." 28 U.S.C. foll. § 2255 Rule 4(b); *see also* 28 U.S.C. § 2255(b); *United States v. Drummond*, 910 F.2d 284, 285 (5th Cir. 1990) ("Faced squarely with the question, we now confirm that § 2255 requires only conclusive evidence—and not necessarily direct evidence—that a defendant is entitled to no relief under § 2255 before the district court can deny the motion without a hearing.").

A prisoner may bring a Sixth Amendment "ineffective-assistance-of-counsel claim … in a collateral proceeding under § 2255." *Massaro v. United States*, 538 U.S. 500, 504 (2003). If he does, his claim is analyzed under the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *United States v. Willis*, 273 F.3d 592, 598 (5th Cir. 2001). To prevail, he has the burden of showing (1) his counsel's performance was deficient and (2) the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 689–94. To establish deficient performance, he must prove that his counsel's assistance fell "'below an objective standard of reasonableness.'" *United States v. Conley*, 349 F.3d 837, 841 (5th Cir. 2003) (quoting *Strickland*, 466 U.S. at 688). In other words, he must show his "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *United States v. Lincks*, 82 F.4th 325, 330–31 (5th Cir. 2023). "[T]o establish prejudice, [he] 'must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (quoting *Strickland*, 466 U.S. at 694).

## ANALYSIS

### A.  Physical Restraints

Movant claims his trial and appellate counsel provided constitutionally ineffective assistance when they failed to object to his appearance at his jury selection while in shackles. (ECF No. 2550 at 4, 6).

Physical restraints on a defendant which are visible to a jury are generally forbidden by the Fifth Amendment "absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial." *Deck v. Missouri*, 544 U.S. 622, 629 (2005). This is because restraints may undermine "the presumption of innocence and the related fairness of the factfinding process." *Id*. at 630. Additionally, they may "interfere with a defendant's ability to participate in his own defense, say, by freely choosing whether to take the witness stand on his own behalf." *Id*. at 631. Finally, they may be an affront to the "dignity and decorum of judicial proceedings that the judge is seeking to uphold." *Id*. (quoting *Illinois v. Allen*, 397 U.S. 337, 344 (1970).

But this "constitutional requirement ... is not absolute." *Id.* at 633. And a trial court may exercise its discretion and determine that restraints "are justified by a state interest specific to a particular trial" after considering factors such as potential security problems and the risk of escape. *Id.* at 629. Furthermore, a "'brief and inadvertent exposure to jurors of defendants in handcuffs is not so inherently prejudicial as to require a mistrial.'" *United States v. Turner*, 674 F.3d 420, 435 (5th Cir. 2012) (quoting *United States v. Diecidue*, 603 F.2d 535, 549 (5th Cir. 1979)). In such a case, the defendant bears "'the burden of affirmatively demonstrating prejudice,'" which cannot be inferred from an isolated incident alone. *Id.*

Movant's counsel does not recall his client appearing before the potential jurors in shackles:

> If I had seen that … I would have objected and gotten a ruling. If it had happened before I could have stopped it I would have moved for a mistrial. The evening before the trial I met with his mother … in downtown San Antonio and picked up new clothes she bought for him for the trial. I took them to the U.S. Marshal's office and [Movant was] dressed in appropriate "business casual" attire at all times.

(ECF No. 2564-1 at 2).

During jury selection, Movant was asked to stand before the jury to ensure no jurors knew him. (ECF No. 1621 at 9). Later that same day, Movant was described by a witness as "the one with the blue shirt." *Id*. at 290. If Movant had been shackled, it would have been noticeable to the Court and counsel when he stood for identification and as he sat in the courtroom.

Movant may be conflating his jury selection with his suppression hearing. A description of Movant by New Braunfels Police Department Detective Brian Onofre at his suppression hearing includes an observation that he was in the courtroom wearing prison "housing" clothing and handcuffs:

Q. Is one of the persons indicted in that case Mr. Robert Eugene Hernandez?

A. Yes, he is.

Q. Is he present in the courtroom today?

A. Yes, sir.

Q. Would you please point out an article of clothing that he's wearing and identify him for the record.

A. Yes, sir. It's the gentleman sitting next to defense counsel wearing the blue housing and *handcuffs*.

MR. LEACHMAN: Your Honor, may the record reflect the witness has identified Mr. Hernandez?

(ECF No. 1885 at 4–5) (emphasis added). A description of Movant by Detective Onofre at his trial includes a remark that Movant was in street clothes—and nothing about handcuffs:

> Q. Okay. Did you participate in the arrest of Robert Eugene Hernandez?
>
> A. Yes, sir.
>
> Q. Is that individual in the courtroom here today?
>
> A. Yes, sir.
>
> Q. Would you just point him out and an article of clothing that he's wearing?
>
> A. He would be wearing the red shirt with tie.
>
> MR. LEACHMAN: Your Honor, may the record reflect the witness has identified Mr. Hernandez?

(ECF No. 1626 at 121).

Even taking as true Movant's assertion that potential jurors saw him in shackles, this was at most a brief and inadvertent exposure—and an isolated incident. Therefore, Movant bears the burden of demonstrating prejudice. And in this case, he does not present any evidence showing that he was actually prejudiced. So, he has not met his burden of showing there is a reasonable probability that, but for counsel's alleged unprofessional errors, the result of the proceeding would have been different.

## B.  Jury Instruction

Movant claims his trial and appellate counsel provided constitutionally ineffective assistance when they failed to object to the trial court's instruction on the definition of conspiracy given in response to the jury's note. (ECF No. 2550 at 4, 6).

During deliberations, the Court received a note from the jury indicating it needed help with the meaning of the term conspiracy:

> We are having difficulties regarding the definition of "conspiracy." In order to be found guilty of Count 1, is it necessary to have evidence that the defendant actually used force (or threatened to) or is it sufficient that they are members of an organization that is known to use force (or threat of force)?

(ECF No. 1404). The Court provided the following response:

> I am in receipt of your note, a copy of which is attached.

> With regard to Count One, as instructed on page eleven of the Court's Instructions to the Jury, you must find that two or more persons reached an agreement to obtain property from another with that person's consent by the wrongful use of actual or threatened force, violence, or fear, which obstructed, delayed, or affected commerce.

> If you find that two or more persons conspired to obtain property from another with that person's consent by the wrongful use of actual or threatened force, violence, or fear, which obstructed, delayed, or affected commerce, and you also find that a Defendant in this case joined in this conspiracy, then the above element is satisfied as to that Defendant.

> It is not necessary for you to find that a Defendant in the case before you used or threatened wrongful force, violence, or fear.

> Please continue your deliberations.

(ECF No. 1405). In its response, the Court followed the language of the Fifth Circuit Pattern Jury Charge on conspiracy (5th Cir. P.J.C. 2.15) and extortion by force, violence, or fear (5th Cir. P.J.C. 2.73A). "It is well-settled that a district court does not err by giving a charge that tracks [the Fifth] Circuit's pattern jury instructions and that is a correct statement of the law." *United States v. Whitfield*, 590 F.3d 325, 354 (5th Cir. 2009) (citing *United States v. Turner*, 960 F.2d 461, 464 (5th Cir.1992)).

9

Consequently, any objection to the instruction by Movant's counsel would have been unavailing. Counsel's failure to make a frivolous objection cannot constitute ineffective assistance. *See Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir. 1998) ("[F]ailure to make a frivolous objection does not cause counsel's performance to fall below an objective level of reasonableness."). And "[a]n attorney's failure to raise a meritless argument thus cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue." *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999). Accordingly, Movant cannot show his counsel's omission in not challenging the trial court's instruction was either deficient or prejudiced his cause.

### C.  Request for Payment

Movant maintains his trial counsel requested payment despite his appointment under the Criminal Justice Act. (ECF No. 2550 at 5). He concedes that the request does not independently establish his counsel provided ineffective assistance, but he suggests that the request calls into question his counsel's diligence:

> It is customary in criminal appointments that counsel receive their legal fees solely from the court. In this case, however, Mr. Hernandez's appointed defense counsel requested and received a private payment of $1,000 from Mr. Hernandez and his family for legal fees in connection with a matter related to the instant prosecution. That request and the payment destroyed the attorney-client relationship of trust and confidence which is essential to effective representation. The defense counsel's conduct in requesting private payment was improper. *See generally, American Bar Association, Code of Professional Responsibility, DR 2-106; American Bar Association, Standards for the Defense Function, Standard 3.3* (2d ed. 1980). While the request for payment does not independently establish ineffective assistance of counsel, the payment does call into question whether counsel was a diligent and devoted advocate of Mr. Hernandez's case, or whether he was primarily interested in collecting a fee. *Cf. Friedman v. United States*, 588 F.2d 1010, 1016 (5th Cir. 1979).

(ECF No. 2551 at 8–9).

10

"A court should be conscious of its responsibility to preserve a reasonable balance between the need to ensure ethical conduct on the part of lawyers appearing before it and other social interests, which include the litigant's right to freely chosen counsel." *Woods v. Covington Cnty. Bank*, 537 F.2d 804, 810 (5th Cir. 1976). "Members of the bar of this court and any attorney permitted to practice before this court must comply with the standards of professional conduct set out in the Texas Disciplinary Rules of Professional Conduct." W.D. Tex. R. AT-7(a). Texas Rule 1.05, Confidentiality of Information, prohibits a lawyer's use of confidential information obtained from a former client to that former client's disadvantage. Texas Rule 1.06, Conflict of Interest: General Rule, provides that "[a] lawyer shall not represent opposing parties to a litigation." Texas Rule 1.09, Conflict of Interest: Former Client, provides in relevant part, "[w]ithout prior consent, a lawyer who personally has formally represented a client in a matter shall not thereafter represent another person in a matter adverse to the former client."

Additionally, DR 2-106, Fees for Legal Services, states "[a] lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee." "Prevailing norms of practice as reflected in American Bar Association standards and the like, e.g., ABA Standards for Criminal Justice 4–1.1 to 4–8.6 (2d ed. 1980) ("The Defense Function"), are guides to determining what is reasonable, but they are only guides." *Strickland*, 466 U.S. at 688.

Finally, in the *Friedman* case cited by the Movant, the Fifth Circuit Court of Appeals noted that the § 2255 movant alleged his court-appointed counsel claimed the court-awarded fee was too meager to justify more than a perfunctory effort on the movant's behalf and "repeatedly demanded … an additional fee." *Friedman*, 588 F.2d at 1013. It observed that "if indeed the attorney demanded the fee, … and if [movant] was only able to satisfy that demand in part, there is an

increased likelihood that the attorney's efforts were in fact perfunctory and that [movant] did not receive the reasonably effective assistance of a diligent and devoted advocate." *Id*. at 1016. It added that this observation "should not be read to imply that every § 2255 petitioner who merely alleges that his court-appointed attorney did not adequately prepare for trial or demanded an additional fee is automatically entitled to an evidentiary hearing." *Id*. at 1017. But it found in this case that the movant had "supported his assertions with a relatively detailed petition and a copy of the $400 cancelled check." *Id*.

Movant's counsel responds that he did not take money from his client for his criminal case. Instead, he claims that he agreed to bring a civil claim on behalf of Movant's grandmother in exchange for a fee:

> [Movant] was angry that when the U.S. Marshals entered his grandmother's house … looking for him they damaged the house. He kept telling me to bring that up during his criminal trial and to cross examine the agents about it. It told him that I thought it was not relevant and the judge would not allow that line of questioning. I recall that I asked for a bench conference and Judge Rodriquez explained to him why that line of questioning would not be allowed, and that it was a civil matter. I explained to him that his grandmother could file a civil claim for damages with the Government. He wanted me to prepare the claim. I did not want to take on that case so I quoted a fee of $1,000 thinking that would dissuade the grandmother. Instead, she agreed.
>
> ****
>
> It was my opinion that the damage claim was a separate, civil matter and I reluctantly agreed to file the claim. Any money I received came from the mother or grandmother, not [Movant]. [He] was not happy with the result and wanted his grandmother to get a refund. I agreed to refund $500.

(ECF No. 2561-1 at 2). The fee was paid in full by either Movant's mother or grandmother.

The record does not support the conclusion that Movant's counsel entered into an agreement for an illegal or clearly excessive fee. It does not support a conclusion that Movant's

counsel violated the Texas Disciplinary Rules of Professional Conduct by using confidential information provided by Movant to represent another person to Movant's disadvantage. Further, it does not support a conclusion that Movant's counsel prejudiced Movant's criminal case by representing his grandmother in a civil matter related to damage to her home. Consequently, it does not establish that there is a reasonable probability that, but for counsel's purported unprofessional error of requesting and receiving $1,000 to file a civil claim on behalf of Movant's grandmother, the outcome in Movant's criminal case would have been different. Accordingly, Movant has not shown his counsel's performance prejudiced his cause.

### D.  Mitigating Evidence

Movant contends that his trial counsel provided ineffective assistance at his sentencing by failing to develop and present mitigating evidence (ECF No. 2550 at 5). He explains that his counsel only filed a two-page sentencing memorandum:

> Former counsel was constitutionally deficient for failing to develop and present available mitigation evidence based on [Movant's] PTSD, the impact that the medications prescribed for this condition had on him during the time frame of the offenses, and his substance abuse issues. These failures include counsel not seeking funding for a mitigation specialist and expert witnesses to testify to the impact that these conditions predictable have on a defendant such as Mr. Hernandez and how these conditions may mitigate the offenses for which he was convicted. Instead, counsel filed a 2-page sentencing memorandum without relevant supporting materials.

(ECF No. 2551 at 12). He argues that his "counsel's failure to obtain a mental health and substance abuse evaluation rose to the level of deficient performance is inescapable." *Id.* at 15.

Movant's presentence investigation report (PSR) detailed his physical condition, mental and emotional health, and history of substance abuse. (ECF No. 1679 at ¶¶ 97–101). His counsel's sentencing memorandum described his age, military service, medical conditions, and mental

health. (ECF No. 1815). Movant's suggestion that the mitigating factors should have been balanced differently is insufficient to disturb the presumption of reasonableness afforded in-or-below-the-guidelines sentences. *See United States v. Alvarado*, 691 F.3d 592, 597 (5th Cir. 2012) ("The district court's sentence, which falls within a properly calculated Guideline range, is entitled to a presumption of reasonableness and Alvarado's mere belief that the mitigating factors presented for the court's consideration should have been balanced differently is insufficient to disturb this presumption."); *United States v. Mares*, 402 F.3d 511, 519 (5th Cir. 2005) ("If the sentencing judge exercises her discretion to impose a sentence within a properly calculated Guideline range, in our reasonableness review we will infer that the judge has considered all the factors for a fair sentence set forth in the Guidelines."). Movant has failed to show his counsel's performance regarding mitigation evidence was either deficient or prejudiced his cause.

### E.  Possession of Firearm

Movant argues his custody of the firearm was constitutionally protected by the Second Amendment and his conviction for felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (Count Twenty) was therefore unsound. *Id.* at 8 (citing *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022)).

"Where the petitioner … failed properly to raise his claim on direct review, the writ is available only if the petitioner establishes 'cause' for the waiver and shows 'actual prejudice.'" *Reed v. Farley*, 512 U.S. 339, 354 (1994). Movant failed to raise this claim at trial or on direct review. Because he has not shown cause for the waiver or actual prejudice, he is procedurally defaulted from raising this challenge in a § 2255 motion.

Furthermore, the *Bruen* Court described the petitioners as "two *ordinary*, *law-abiding*, *adult citizens* [who] were part of 'the people' … the Second Amendment protects." *Bruen*, 597 U.S. at 31–32 (emphasis added). It explained that "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Id*. at 17. "The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* Only if the Government meets its burden "may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command." *Id*. (internal quotation marks and citation omitted). In his concurring opinion in *Bruen*, Justice Kavanaugh—quoting *District of Columbia v. Heller*, 554 U.S. 570, 626–27 (2008), and *McDonald v. Chicago*, 561 U.S. 742, 786 (2010)—made it clear that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill." *Id*. at 81 (Kavanaugh, J., concurring) (internal quotation marks omitted).

Before *Bruen*, the Fifth Circuit held that § 922(g)(1)—which makes it unlawful for any convicted felon to possess a firearm—did *not* violate the Second Amendment. *United States v. Darrington*, 351 F.3d 632, 633–34 (5th Cir. 2003); *see also United States v. Jeffery*, No. 21-437, 2023 WL 4629556, at *3 (W.D. Tex. July 19, 2023) (concluding "that this Court is bound by a well-established line of Fifth Circuit precedent on Section 922(g)(1) that does not directly conflict with *Bruen*" and "is required to adhere to that precedent until the Fifth Circuit or Supreme Court dictate otherwise").

Movant was a felon and not an ordinary, law-abiding, adult citizen. He cannot meet his burden of showing that *Bruen* undermines the constitutionality of his conviction for felon in

possession of a firearm in violation of § 922(g)(1). His custody of the firearm was, therefore, *not* protected by the Second Amendment. He is not entitled to relief on this claim under § 2255.

## EVIDENTIARY HEARING

A motion brought under § 2255 may be denied without a hearing if the motion, files, and records of the case conclusively show that the defendant is not entitled to relief. *United States v. Bartholomew*, 974 F.2d 39, 41 (5th Cir. 1992) (holding that there was no abuse of discretion in denying a § 2255 motion without a hearing where the movant's assertions of ineffective assistance were wholly conclusory in nature and refuted by reference to the record itself). The record in this case is adequate to dispose fully and fairly of Movant's claims. The Court need inquire no further on collateral review and an evidentiary hearing is not necessary.

## CERTIFICATE OF APPEALABILITY

A movant may not appeal a final order in a habeas corpus proceeding "[u]nless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(B). He may not receive a certificate of appealability unless he "has made a substantial showing of the denial of a constitutional right." *Id*. § 2253(c)(2). He "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong" when district court rejects his constitutional claims on the merits. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002) (applying *Slack* to a certificate of appealability determination in the context of § 2255 proceedings). He must show both that "jurists of reason would find it debatable whether the motion states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was

correct in its procedural ruling" when district court rejects his claims solely on procedural grounds. *Slack*, 529 U.S. at 484.

The Court will not issue a certificate of appealability because reasonable jurists could not debate the Court's reasoning for denying Movant's claims. *Miller El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484).

## CONCLUSIONS AND ORDERS

The Court concludes that Movant is not entitled to § 2255 relief on his claims. The Court further concludes that Movant is not entitled to a hearing or a certificate of appealability. Accordingly, the Court enters the following orders:

**IT IS ORDERED** that Movant Robert Eugene Hernandez's request for an evidentiary hearing is **DENIED**.

**IT IS FURTHER ORDERED** that Movant Robert Eugene Hernandez's "Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody" (ECF No. 2550) is **DENIED** and his civil cause is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Movant Robert Eugene Hernandez is **DENIED** a **CERTIFICATE OF APPEALABILITY**.

**IT IS FINALLY ORDERED** that the Clerk shall **CLOSE** this case.

It is so **ORDERED**.

**SIGNED** this 12th day of August, 2024.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

17